Mr. Justice James
delivered the opinion of the Court:
The complainants pray that a certain conveyance of property in this city, which belonged separately to Mrs. Merchant, may be decreed to be void on the ground that it was obtained by duress.
It appears by the testimony that at the time of the transaction in question, the defendant Cook was Collector of Taxes for this District, and the complainant, Silas Merchant, was cashier in the same office; that on the day before this conveyance, Merchant and Cook were called before the District Commissioners, in the office of the latter, and Merchant was asked to explain a deficit which appeared in his accounts. After some conversation, Major Twining, the Engineer Commissioner, addressing both Cook and Mer *146 chant, said that, although the cashier had not been appointed by Mr. Cook, but by superior authority, Cook was liable primarily for the deficit, and that Merchant must answer to Cook. He proceeded to say that the matter must be attended to at once; that it was a case of embezzlement; that they (the Commissioners) had taken advice of counsel and would place the papers in the hands of the District Attorney unless he, Merchant, should secure the debt within twenty-four hours. Cook testifies that he understood the threat of prosecution to be aimed at him, or at least at him as much as at Merchant. Donovan, a disinterested witness, sustains Merchant’s statement that the threat was addressed to the latter.
Afterwards, when Cook and Merchant had returned to the Tax Collector’s office, Vinson, the Auditor of the District asked Merchant how he could secure the deficit, and drew from the latter the fact that his wife had property, and that he could give security in that way. It was understood that the security should be of that character. That night Merchant related all the circumstances to his wife, informing her that he was threatened with prosecution. On the following day Vinson prepared the papers which were after-wards executed, having obtained a description of Mrs. Merchant’s property. Vinson, having these deeds with him, called Merchant to accompany him in a carriage to the house of the latter. Several other persons belonging to the Tax Office went with them. Mrs. Merchant, who was unwell, was called down stairs by her husband, the papers were presented to her and she executed them. There is some dispute as to the circumstances of her 'acknowledgment; but the testimony seems to s.how that Mr. Merchant was in another part of the room when the examining officer took her acknowledgment, and that the proceeding was conducted with the usual degree of ceremony. It should be observed that in this transaction Mrs. Merchant conveyed to Cook all the real estate that she possessed.
Soon afterwards Merchant was dismissed from the Tax *147 Office, but was permitted to examine his old accounts with a view to his establishing that he was not responsible for any deficit. The result was that Mrs. Merchant, joined by her husband in the action,.as she had been in -the conveyance, has filed this bill, claiming that the conveyance to Cook, although absolute in form, was given only as a security for whatever deficit might appear; that Merchant was not in fact liable for any deficit, and that this conveyance was obtained from her by duress of threats.
We have to consider, first, what conclusions of fact are established by the testimony, and second the legal effect of these facts.
We are satisfied, in the first place, that Commissioner Twining, with the concurrence and by the .-authority of all the Commissioners of the District, charged Merchant with embezzlement, and threatened to take steps to prosecute him for that crime, unless he should within twenty-four hours secure payment of the amount of -his alleged deficit. It is admitted by the defendant Cook that such words of menace were uttered, but he says he understood at the time that they were addressed as well to himself as to Merchant. We are satisfied he understood that at all events the latter was menaced with prosecution unless there should be a settlement. It does not appear that the Commissioners, or that Major Twining knew that the security demanded of Merchant could be given only by Mrs. Merchant, and that the menace therefore meant that the' husband would be prosecuted for embezzlement unless the wife should secure payment by means of her property.' But it does appear that Vinson, the auditor, was acting in view of what had been said on behalf of the Commissioners, and was in effect pressing that threat when he proceeded to prepare a deed for Mrs. Merchant to sign. The whole transaction was so connected that the deed prepared for Cook’s benefit was nothing less than the threat put into form. We think it is immaterial that the menace of prosecution was not addressed to Mrs. Merchant; it is enough that it was made, and that it came to *148 her as it was made. Our conclusion is that she signed that deed under the pressure of an understanding that her husband was to be prosecuted for the crime of embezzlement unless she should do so.
What was the legal effect of her signature and acknowledgment under such circumstances ?
It is an unquestioned principle that what is done by a person without his own consent is not, in a legal sense, his act at all. For example, if one sign an instrument under compulsion of a force which he cannot be expected to resist, the law holds that there has been a complete absence of consent on his part, and that therefore he has done nothing. The alleged act is a nullity. It is now established that this principle applies when a father is induced to execute a contract by threats that, unless he does so, his son will be prosecuted for a felony; or when a wife is induced to do a similar act by like threats concerning her husband. To the honor of judicial manhood, it is held that neither a father nor a wife can be expected to exercise will in the presence of such threats, and that when either yields to them, the act must be considered to have lacked the legal element of consent, and is therefore to be treated as a nullity.
A very interesting discussion of this principle may be found in Williams vs. Bayley, L. R., 1 H. L. Cases, 200; S. C., 35 L. J. N. S., Eq. 717. In that case a father had indorsed for his son, after which the son forged numerous indorsements. At length the holders of the paper pressed the father for a settlement. In their interviews with him, they did not say in direct words that the son was guilty of forgery and that they should prosecute and would enforce the penalties of the law, but they did say: “We do not wish to exercise pressure on you if it can be satisfactorily arranged.” The specially interesting feature of this case is that the court were willing to gather from vague and indefinite language the actual presentation of a menace of prosecution, and then to apply the doctrine of duress. Nothing could better illustrate the watchfulness of the courts to de *149 feat this cruel process of reimbursing losses out of the sympathy and terror of innocent persons. Speaking of the father, Lord Westbury said:
“ The only motive to induce him to adopt the debt was the hope that by so doing he would relieve his son from the inevitable consequences of his crime. The question, therefore, is whether a father, appealed to under the circumstances to take upon himself an amount of civil liability, with the knowledge that unless he does so his son will be exposed to a criminal prosecution with the certainty of conviction, can be regarded as a free and voluntary agent? I have no hesitation in saying that no man is safe, or ought to be safe, who takes a security for the debt of a felon 'from the father of a felon under such circumstances.”
Afterwards his Lordship added:
“ A contract to give security for the debt of another, which is a contract without consideration, is, above all things, a contract that should be based upon the free and voluntary agency of the individual who enters into it. But it is clear that the power of considering whether he ought to do it or not, is altogether taken away from a father who is brought into the situation of either refusing, and leaving his son in that perilous condition, or of taking on himself the amount of that civil obligation. I have, therefore, in that view of the case, no difficulty in saying that, as far as my opinion is concerned, the security given for the debt of the son by the father, under such circumstances, was not 'the security of a man who acted with that freedom and power of deliberation that must, undoubtedly, be considered as necessary to validate a transaction of such a description
These observations remind us that Mrs. Merchant, too, was called upon to give security for the debt of another, that hers was a contract for which she received no consideration, and therefore was, in the words of Lord Westbury, “ above all things a contract that should be based upon the free and voluntary agency of the individual who enters into it.” The requirement of free consent, which is applied to all contracts, is intensified in such transactions as this, and any *150 disregard of it is to be more sternly treated. Instead of being allowed “that freedom and power of deliberation” which Lord Westbury considered “ necessary to validate a transaction of such a description,” Mrs. Merchant was called upon by the officer who had the auditing of her husband’s accounts, accompanied by others representing the same office, to decide suddenly and without any deliberation whether she would pledge all of her property for the purpose of averting a prosecution of her husband for the alleged crime of embezzlement.
In this country a similar principle has been applied to the case of the wife. In Eadie vs. Stimmon, 20 New York, 9, the action was to recover $2,000 on a life insurance policy which had been obtained for the benefit of Mrs. Eadie, and was by her assigned to the defendant Stimmon. It appeared that the defendant claimed that Mr. Eadie was liable to him for moneys embezzled, and went to the house of the latter to demand a conveyance of his house and an assignment of this policy. Mrs. Eadie was informed during a wrangling discussion that the defendant intended to prosecute her husband criminally unless his demands were complied with, and that an officer was already waiting to arrest him. Finally she executed an assignment of her policy. The court of appeals said: “ I can imagine no duress over a man, no restraint over his person, or dread of personal injury, more likely to deprive him of free agency, and induce him to yield to the wishes and demands of another, than the duress over this woman, operating through appeals thus addressed to her pride, her fears, her affections and sensibilities.” The wife’s assignment was held to be invalid.
In New Jersey it was held by the Vice-Chancellor, in the case of Lomerson vs. Johnston, 44 N. J, Eq., 93, that when the creditors of the husband induce the wife to join with him in giving a mortgage on her real estate to secure his debt, by telling her that he had been guilty of embezzlement and could be imprisoned for that crime, and it appeared that such statements had created fear or just apprehension, the reasonable conclusion is that the free agency of the wife was *151 overcome; that ,the execution of the mortgage was obtained by undue pressure, and that it cannot be enforced against the wife’s real estate.
We think that these authorities are sufficient support for the proposition that a wife cannot be considered to have consented in a.legal sense, when she has been induced to secure the debt of her husband by threats to prosecute him for the crime if she should refuse to do so.
It was objected, however, at the argument, that it appeared in Ml the cases cited that the menace ,of prosecution had come from the person secured, and that in the case before us Cook did not appear to have had anything to do with the threats of prosecution.
We have already pointed out that when he received this deed he had. actual knowledge of the threats which had been coupled with a failure to give security. The circumstances would justify a conclusion that, when this deed was handed to him, he must have known at once that it was the product of those threats. At all events, it is immaterial that he took no active patt in procuring the execution of the mortgage. The work was done for his benefit, and he could not accept the end without adopting the means.
A similar objection was raised in the case of Central Bank of Frederick vs. Copeland and wife, 18 Md., 306. In that case it was the husband who had compelled the wife, by means of harshness and threats, to mortgage her property to secure his debt. Cochran, J., speaking for the court, said: “The fact that McPherson and Thomas (the mortgagees) personally took no active part in procuring the execution of the mortgage by Mrs. Copeland, does not strengthen their right to set it up as a valid deed, nor does it impair her right to avoid it. Its execution was procured by the husband, acting in their interest and for their benefit, and as their acceptance of the mortgage implies an adoption of his agency, they can have no right to enforce it, free from infirmities originating in this use of unconscionable means to compel its execution.”

A decree anmdling Mrs. Merchant's deed will be made.